UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN K. PARKER | CIVIL ACTION |
| VERSUS | |
| SIDNEY J. GAUTREAUX, III, IN HIS CAPACITY AS SHERIFF OF EAST BATON ROUGE PARISH, LIEUTENANT COLONEL DENNIS GRIMES IN HIS CAPACITY AS WARDEN OF THE EAST BATON ROUGE PARISH PRISON, DEPUTY RUDOLPH HYDE, SERGEANT THOMAS, DEPUTY MCCASTLE, SERGEANT THORNTON, AND DEPUTY JACKSON | NO. 12-00605-SDD-RLB |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendants, Sidney J. Gautreaux, III, in his capacity as Sheriff of East Baton Rouge Parish, Lieutenant Colonel Dennis Grimes, in his capacity as Warden of the East Baton Rouge Parish Prison, Deputy Rudolph Hyde, Sergeant Amos Thornton, and Deputy Ulysses Thomas (collectively, "Defendants").[2] Defendants move dismissal of the official capacity claims as to all Defendants, and the individual capacity claims as to Sherriff Gautreaux and Warden Grimes. Plaintiff,

---

[1] Rec. Doc. 17.
[2] This motion was not filed on behalf of Defendants Deputy Leon McCastle or Deputy Jackson.

DM No. 1926          1

Justin K. Parker, has filed an *Opposition* to the *motion*.[3] For the following reasons, Defendants' *Motion for Summary Judgment* is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

While being held as an inmate in East Baton Rouge Parish Prison, Plaintiff claims that in the early morning hours of September 26, 2011, he was physically attacked without any provocation by several Sheriff's Deputies while waiting in the "Sally Port" to be transported to his medical appointment. The parties are, however, in disagreement regarding who was actually involved in the alleged incident.

According to the Plaintiff, Defendant Deputy Jackson grabbed his throat and restrained him, while Defendant Sergeant Amos Thornton "commenced in a savage beating wherein Plaintiff suffered numerous blows to the head and face."[4] Thereafter, Plaintiff contends that Defendant Jackson "dropped" him to the floor, where Deputy-Defendants Thornton, Hyde, Thomas, McCastle, and Jackson proceeded to repeatedly kick him in his head and ribs, causing him to sustain injuries to his face, head, and eye.[5] Plaintiff further alleges that these Deputy-Defendants left him locked up in the Sally Port, where he remained until he was discovered by a member of the next shift. As a result of this altercation, Plaintiff maintains that he has suffered long-term effects, including persistent headaches, blurred vision, and tearing and flashes in his left eye.

---

[3] Rec. Doc. 19.
[4] Rec. Doc. 1, p. 6, ¶40; Rec Doc. 12, p. 6, ¶41.
[5] Rec. Doc. 1, p. 6, ¶41; Rec. Doc. 12, p. 7, ¶42.

Defendants admit that on September 26, 2011, Plaintiff filed an internal inmate grievance form (ARP) against the Deputy-Defendants arising out of the incident, which was deemed to be "founded."[6] Defendants further contend that the East Baton Rouge Parish Sheriff's Office (EBRSO) prison administration "[took] the necessary action for this incident," whereby an investigation was conducted.[7] As a result of this investigation, EBRSO Deputy McCastle was terminated for violations of EBRSO policies.[8]

On September 25, 2012, Plaintiff filed this action under 42 U.S.C. § 1983 alleging violations against each of the Deputy-Defendants in their individual and official capacities under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution arising out of his claims of excessive force and unreasonable seizure, as well as various state law claims. Plaintiff has also raised 42 U.S.C. § 1983 claims against Sheriff Gautreaux in his official capacity as Sheriff of East Baton Rouge Parish and Lieutenant Colonel Dennis Grimes in his official capacity as Warden of East Baton Rouge Parish Prison (EBR Parish Prison), contending that they have adopted policies and customs "exhibiting deliberate indifference to the constitutional rights of persons in the City-Parish of East Baton Rouge,"[9] including the inadequate or improper investigations of complaints of "police misconduct and physical brutality, and acts of

---

[6] Rec. Doc. 1, p. 9, ¶¶63-65; Rec. Doc. 12, p. 9, ¶¶64-66;Rec. Doc. 2, p. 3, ¶¶12-13; p. 8, ¶¶63-65; Rec. Doc. 16, p. 3, ¶¶12-13; p. 8, ¶¶65-66.
[7] Rec. Doc. 2, p. 8, ¶66; Rec. Doc. 16, p. 9, ¶67.
[8] Rec. Doc. 2, p. 3, ¶13; Rec. Doc. 16, p. 3, ¶13.
[9] Rec. Doc. 1, p. 14, ¶ 95; Rec. Doc. 12, p. 14, ¶ 96.

misconduct,"[10] and failure to take remedial action when apprised with knowledge of such misconduct.[11]

Plaintiff further contends that Sheriff Gautreaux and Warden Grimes had policies or customs that did not "require appropriate in-service training or re-training of officers who were known to have engaged in public misconduct and/or prison abuse/ brutality."[12] As for his state law claims, Plaintiff alleges that Sheriff Gautreaux and Warden Grimes are vicariously liable for the tortious acts of the Deputy-Defendants under the doctrine of *respondeat superior*.[13] Plaintiff specifically alleges that he was "wrongfully beaten, falsely imprisoned, and viciously abused" by the Deputy-Defendants, and they should be held accountable under state law.[14] Plaintiff seeks compensatory and punitive damages, as well as costs and reasonable attorney's fees, per 42 U.S.C. § 1988.

For the purpose of this *motion*, Defendants contend that all of Plaintiff's official capacity claims must be dismissed, as well as Plaintiff's individual capacity claims against Defendants Sheriff Gautreaux and Warden Grimes.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[10] Rec. Doc. 1, p. 14, ¶96; Rec. Doc. 12, p. 16, ¶97.
[11] Rec. Doc. 1, p. 14, ¶99; Rec. Doc. 12, p. 15, ¶ 99.
[12] Rec. Doc. 1, p. 15, ¶100; Rec. Doc. 12, p. 15, ¶ 101.
[13] Rec. Doc. 1, p. 16, ¶104; Rec. Doc. 12, p. 16, ¶105.
[14] Rec. Doc. 1, p. 16, ¶108; Rec. Doc. 12, p. 17, ¶109.

as a matter of law."[15] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[16] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[17] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[18] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[19]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[20] All reasonable factual inferences must be resolved in favor of the nonmoving party.[21] Nevertheless, "[t]he Court has no duty to search the record for material fact

---

[15] Fed.R.Civ.P. 56(a)(West 2014).
[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
[17] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552).
[18] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).
[19] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted)).
[20] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 ("If a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial.").
[21] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[22] "Conclusory allegations unsupported by specific facts, however, will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without any "significant probative evidence tending to support the complaint."'"[23] Ultimately "[t]he substantive law dictates which facts are material."[24]

### B.  42 U.S.C. § 1983 Claims

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[25] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct or deprivation complained of was committed by a person acting under color of state law."[26] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising out of tort

---

[22] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[23] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[24] *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).
[25] *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).
[26] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998). See also, *Elphage v. Gautreaux*, 2013 WL 4721364, *5 (M.D. La. Sept. 3, 2013).

law.[27] As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[28]

"The performance of official duties creates two potential liabilities, individual- capacity liability for the person and official-capacity liability for the municipality."[29] Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. However, to be liable in one's official capacity under § 1983, the defendant must have been delegated policy-making authority under state law. In contrast, a state actor may have § 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law.

## III. ANALYSIS

### A. Official Capacity Claims

Plaintiff has asserted claims arising under 42 U.S.C. § 1983 against Sheriff Gautreaux, Warden Grimes, Deputy Rudolph Hyde, Sergeant Amos Thornton, and Deputy Ulysses Thomas in their official capacities. "An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent."[30] To determine whether a public official is liable in his official capacity, "the Court looks to the jurisprudence discussing whether a municipality or local government

---

[27] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
[28] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[29] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478 (5th Cir. 2000)

[30] *Hills v. Stevens*, 2012 WL 3779138, *3 (M.D.La. Aug. 31, 2012) (citing, *Kentucky v. Graham*, 473 U.S.159, 165-66, 105 S.Ct. 3099, 3104-06, 87 L.Ed. 2d 114 (1985)).

entity is liable under section 1983."[31] Although municipalities cannot be held liable in a Section 1983 action under the theory of *respondeat superior*, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[32] Municipal liability under 42 U.S.C. § 1983 requires proof of the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[33] "Proof of these three elements is necessary 'to distinguish individual violations perpetrated by local government employees form those that can be fairly identified as actions of the government itself.'"[34]

1. *Official Capacity Claims: Deputies Hyde, Thornton, and Thomas*

Plaintiff has neither alleged nor offered any evidence contending that Deputy Rudolph Hyde, Sergeant Amos Thornton, and Deputy Ulysses Thomas are policymakers for East Baton Rouge Parish. Hence, the official capacity claims against Deputy Rudolph Hyde, Sergeant Amos Thornton, and Deputy Ulysses Thomas will be dismissed.

---

[31] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *3 (E.D.La. May 14, 2009)(hereafter *Quatroy*).
[32] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) (hereafter *Monell*).
[33] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell*, 436 U.S. at 694).
[34] *Quatroy*, 2009 WL 1380196, *4 (citing *Piotrowski*, 237 F.3d 567, at 578).

DM No. 1926         8

### 2. Official Capacity Claims: Sheriff Gautreaux and Warden Grimes

Under Louisiana law, however, Defendant Sheriff Gautreaux is deemed to be the final policymaker and may be sued in his official capacity.[35] The Defendants do not dispute that Warden Grimes is also deemed to be a final policymaker for the EBR Parish Prison; Plaintiff has also provided deposition testimony of the former Chief of Security for the prison which lends support for this position.[36] Therefore, in effect, the Plaintiff's official capacity claims against Sheriff Gautreaux and Warden Grimes are actually claims against EBRSO.

Plaintiff alleges that the following policies were the "moving force" behind the constitutional violations claimed; (1) failure to adequately and properly investigate complaints of police misconduct and physical brutality,[37] (2) failure to adequately and properly supervise and train[38] law enforcement officers including the defendant officers[39] and failure to take remedial measures despite "knowledge of prior incidents of police misconduct and/or prison brutality".[40]

#### a. Failure to Investigate

Plaintiff contends that Sherriff Gautreaux and Warden Grimes had policies or practices of "inadequately and improperly investigat[ing] complaints of police misconduct and physical brutality, and acts of misconduct were instead

---

[35] *Elphage v. Gautreaux*, 2013 WL 4721364, *16 (M.D.La. Sept. 3, 2013)(hereafter "*Elphage*"); *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1300 (W.D.La. 1994)(citing La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.")).
[36] Rec. Doc. 19-4, p. 7. Captain Scott testified that while he could "make recommendations, the warden actually has the power."
[37] Rec. Doc. 1, p.14, ¶96; Rec. Doc. 12, pp. 14-15, ¶97.
[38] Including allegations of failure to provide in-service training or re-training of officers
[39] Rec. Doc. 1, pp. 14-15, ¶99; Rec. Doc. 12, p. 15, ¶100.
[40] Rec. Doc. 1, p. 14, ¶98; Rec. Doc. 12, p. 15, ¶ 99.

tolerated."[41] The plaintiff has the burden of setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case. Plaintiff has offered no evidence to support the conclusory allegation that the Sherriff and Warden had policies of not investigating complaints of police brutality. Rather, the evidence in the record contradicts Plaintiff's supposition. In the Defendant's *Answer*, they admit that, as a result of the Plaintiff's ARP filed on September 26, 2011, an investigation was conducted regarding his complaints.[42] This is corroborated by the deposition testimony of Captain Johnny Scott who testified that he not only conducted an investigation into Plaintiff's incident, but that as Chief of Security at the EBR Parish Prison it was customary for him "to investigate incidences involving physical altercations between deputies and inmates."[43] As a result of this particular investigation, Captain Scott found that Deputy McCastle had violated a number of EBRSO policies, including his use of excessive force,[44] which ultimately led to McCastle's termination.[45]

b. *Failure to Train and Supervise*

As for Plaintiff's failure to supervise or train claim arising under 42 U.S.C. § 1983, he must show that "(1) the supervisor either failed to supervise or train the

---

[41] Rec. Doc. 1, p. 14, ¶96; Rec. Doc. 12, pp. 14-15, ¶97.
[42] Rec. Doc. 2, p. 3, ¶13; Rec. Doc. 16, p. 3, ¶13. ("In response to the allegations of Paragraph 13 of the Amended Complaint, it is admitted that on October 11, 2011, Plaintiff's ARP was deemed to be 'founded,' and Deputy Leon McCastle was terminated for violation of EBRSO policies.").
[43] Rec. Doc. 19-4, p. 8. On the date of the incident in question, Captain Scott was the Chief of Security. At the time of his deposition, Captain Scott was the Chief of Intake and Release. Rec. Doc. 19-4, pp. 6-7.
[44] Rec. Doc. 19-4, pp. 13 and 41.
[45] Rec. Doc. 19-4, pp. 63-65; 73 (Investigation Report and findings of by Captain Scott); Rec. Doc. 19-4, p. 74 (Memorandum from Major Max Schiele to Warden Dennis Grimes recommending termination of Deputy McCastle based on review of Captain Scott's investigation, and after meeting with Deputy McCastle.)

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[46] "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."[47] However, "mere proof that the injury could have been prevented if the officer received better or additional training cannot, without more, support liability."[48] In order to establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"[49] However, "[w]here a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability."[50]

In support of their *motion*, Defendants have supplied evidentiary support that shows that Defendants Thornton, Thomas, and Hyde each obtained their Basic Correctional Peace Officer certifications.[51] Warden Grimes further attested to the fact that each of these Deputy-Defendants participated in forty (40) hours of annual in-service trainings, and attended the required fifteen minute de-briefings before the start of each of their shifts "for review and training on the

---

[46] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).
[47] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).
[48] *Id.*
[49] *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)(citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).
[50] *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).
[51] Rec. Doc. 17-2.

East Baton Rouge Parish Prison policies and procedures."[52] In response, Plaintiff has not offered any evidence to demonstrate that such training was inadequate. Warden Grimes also attested to the fact that at the time of this alleged incident, "there had been no disciplinary action against Deputy McCastle, Deputy Thomas, Deputy Hyde, or Sergeant Thornton involving the use of force."[53]

The Court also finds that Plaintiff has failed to satisfy his requirement of alleging with specificity how the EBRSO's training program was defective. Instead, Plaintiff argues that the failure to train, supervise, and discipline by Defendants Gautreaux and Grimes amounts to deliberate indifference based upon their "creation, sponsorship, and continued use of an inmate area designed to have blind spots not covered by video surveillance."[54] Plaintiff further argues that this "blind" holding cell is used with inmates who are unruly or difficult to control."[55]

In support of his contention, Plaintiff submits deposition testimony of former EBRSO Deputy McCastle who explained that there were no cameras in the Sally Port, but that there was one "as you walk out the door."[56] However, Deputy McCastle repeatedly testified that Plaintiff was brought to the Sally Port because he had an appointment to see a doctor, and this was the routine

---

[52] Rec. Doc. 17-2, pp. 1-2.
[53] Rec. Doc. 17-2, p. 2.
[54] Rec. Doc. 19, p. 11.
[55] Rec. Doc. 19, p. 9.
[56] Rec. Doc. 19-3, pp. 81 and 83.

practice.[57] He specifically stated that Plaintiff was brought to the Sally Port "[b]ecause that's where we place inmates at when they're scheduled to go see the doctor....And that's where all inmates are to remain in the Sally Port, the Unit 1 Sally Port until they are escorted to go wherever destination that they are scheduled to go."[58] Similarly, Captain Scott also testified that it was standard protocol for inmates to be escorted to the Sally Port to await transport to court hearings or for doctor's appointments.[59] Deputy McCastle further testified that he was unaware of any past incidents or any pattern of practice where an inmate who may have aggravated a Deputy or was being unruly was brought to this particular Sally Port as opposed to another Sally Port.[60] He also testified that inmates who were being disciplined for disorderly behavior may be taken at the direction of a supervisor to the front part of the Sally Port, which does not have a camera, but is under a Deputy Officer's surveillance.[61] Deputy McCastle further denied that there was any practice in place at the prison whereby Sheriff's deputies would use the Sally Port as a place "to teach an inmate a lesson" or to "roughen somebody up" due to the lack of cameras.[62]

The Court finds that Plaintiff has failed to provide any evidence that would lead a trier of fact to find that Defendants Gautreaux and Grimes were

---

[57] Rec. Doc. 19-3, pp. 7, 11, and 82.
[58] Rec. Doc. 19-3, pp. 82-83.
[59] Rec. Doc. 19-4, p. 23.
[60] Rec. Doc. 19-3, p. 86.
[61] Rec. Doc. 19-3, pp. 88-90. (Question: "So the area of the Sally Port where Mr. Parker was brought, even though there's not a camera there, there is a person who is sitting in an observation area that would be in a position to see everything that goes on with that inmate?" Answer: "Yes.")
[62] Rec. Doc. 19-3, p. 89-91.

deliberately indifferent in their training and supervision of their Deputies based upon their "creation, sponsorship, and continued use of an inmate area designed to have blind spots not covered by video surveillance."[63] Plaintiff has offered no evidentiary support showing that such a policy existed, or of other instances involving a lack of training or supervision involving these Deputy-Defendants so as to establish a pattern for purposes of deliberate indifference. Plaintiff's argument amounts to conclusory allegations and unsubstantiated assertions that cannot satisfy his burden of proof on a summary judgment motion. Accordingly, the Court finds that Plaintiff has failed satisfy his burden of creating a genuine issue of material fact in order to defeat Defendants' summary judgment motion as to Plaintiff's official capacity claims and they shall be dismissed.

### B. Individual Capacity Claims against Gautreaux and Grimes

Plaintiff has asserted a claim for damages against all Defendants, including Sheriff Gautreaux and Warden Grimes, for the alleged actions taken in their individual capacities. After reviewing the claims and allegations in the *Original* and *Amended Complaints*, it appears that Plaintiff is attempting to hold Defendants Gautreaux and Grimes liable in their individual capacities for their alleged failure to train the Deputy-Defendants in this case regarding the use of proper force on an inmate. In their *motion*, Defendants Gautreaux and Grimes have raised the defense of qualified immunity defense in response.

---

[63] Rec. Doc. 19, p. 11.

"The qualified immunity defense entitles a defendant to avoid the 'burdens of litigation' as well as liability."[64] Qualified immunity protects an official acting under color of state law in their individual capacity "from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[65]

Plaintiff has not alleged that Sheriff Gautreaux or Warden Grimes were personally involved in or present during the incident on September 26, 2011. Therefore, in order for Plaintiff to establish individual liability of a supervisor, such as Sheriff Gautreaux and Warden Grimes, for failure to train, the Plaintiff here must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[66] The record before the Court is devoid of any evidence showing that at the time of the alleged incident any of the named Deputy-Defendants had been involved in prior incidents involving excessive force against an inmate. Moreover, as previously discussed, the evidence presented by the Defendants shows that each of the named Deputy-Defendants participated in annual trainings, and daily briefings on EBR Parish Prison policies. Accordingly, the Court finds that the evidence is insufficient to

---

[64] *Elphage*, 2013 WL 4721364, *5, citing *Manis v. Lawson*, 585 F.3d 839, 843 (M.D.La. Sept. 3, 2013)(quoting *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985)).
[65] *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
[66] *Smith v. Packnett*, 339 Fed.Appx. 389, 393 (5th Cir. 2009).

create a genuine issue of material fact as to whether the Deputy-Defendants were improperly trained or supervised, and whether Sheriff Gautreaux and Warden Grimes acted with deliberate indifference as to the Deputy-Defendants' training and/or supervision. Therefore, Defendants' *motion* shall be granted as to Sheriff Gautreaux's and Warden Grimes' individual capacity claims.

## IV. CONCLUSION

Based on the foregoing, the Defendants' *Motion for Summary Judgment* is hereby GRANTED.[67] Plaintiff's 42 U.S.C. § 1983 official capacity claims against Sheriff Sidney J. Gautreaux, III, Warden Lieutenant Colonel Dennis Grimes, Deputy Rudolph Hyde, Sergeant Amos Thornton, and Deputy Ulysses Thomas are hereby dismissed with prejudice.

Furthermore, Plaintiff's 42 U.S.C. § 1983 individual capacity claims against Sheriff Sidney J. Gautreaux and Warden Lieutenant Colonel Dennis Grimes are hereby dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>August 21, 2014</u>.

*[signature]*

JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[67] Rec. Doc. 17. The Court further notes that a Final Judgment will not be entered as a result of this Ruling, because there are still pending claims against the Deputy-Defendants in their individual capacities.

DM No. 1926        16